**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CASE NO.  8:20-CV-2135-T-KKM-TGW**

KIMBERLY ISNER-MONTICELLO,
And all others similarly situated,

     Plaintiff,

v.

NELNET, INC., a Nebraska corporation,
NELNET DIVERSIFIED SOLUTIONS, LLC,
a Nebraska limited liability company, and
NELNET SERVICING, LLC,

     Defendants.

_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF LAW IN SUPPORT**

Defendants Nelnet, Inc., Nelnet Diversified Solutions, LLC, and Nelnet

Servicing, LLC (collectively, "Nelnet"), through their undersigned counsel, and

pursuant to Federal Rule of Civil Procedure 56 request the Court to enter

summary judgment in their favor on all claims filed by Plaintiff, Kimberly Isner-

Monticello ("Plaintiff").

**I.**    **Introduction and Procedural History**

Plaintiff has sued three separate Nelnet entities, including her student loan

servicer, Nelnet Servicing, LLC ("Nelnet Servicing") in this putative class action. Plaintiff alleges that Nelnet violated the United States Fair Debt Collection Practices Act ("FDCPA") and Florida Consumer Collection Practices Act ("FCCPA") by misrepresenting that it is associated with the United States Department of Education. Plaintiff failed to make a payment on her student loans because she believed that certain provisions of the COVID-19 CARES ACT applied to her loan. [Plaintiff's Amended Complaint with Jury Trial Demand ("Complaint") ECF No. 14 at ¶ 13]. After Plaintiff admittedly failed to make required loan payments, Plaintiff alleges that Nelnet called and left her a voicemail, in which it indicated it was calling on behalf of the United States Department of Education. [ECF No. 14 at ¶12]. Plaintiff alleges she then called Nelnet and learned that her loans were not eligible for the relief offered under the CARES Act. [ECF No. 14 at ¶¶ 14, 17].

Plaintiff filed suit claiming that Nelnet violated the FDCPA and FCCPA by misrepresenting that Nelnet is affiliated with the United States of America. Although Plaintiff filed this case as a putative class action, the parties agreed to bifurcate discovery and dispositive motions. As noted in the parties' Joint Notice of Filing Case Management Report and Agreed Joint Motion to Modify Court's Standard Case Management Order [ECF No. 18], "Defendants anticipate after a

period of limited individual-based discovery they will be able to file a motion for summary judgment as to Plaintiff's individual claims, which, if granted, would obviate the need for any class-based discovery or motion practice." The Court granted the Joint Motion [ECF No. 23], and the instant motion should be dispositive of the entire case.

Plaintiff's claims fail because Nelnet did not make any misrepresentations. In fact, Plaintiff admits that she simply *assumed* that she was not required to make payments because of the CARES Act before receiving the voicemail from Nelnet. If she had first called Nelnet Servicing, or checked its website, or read her e-mails, to confirm whether she was eligible for any relief under the CARES Act before deciding to cease making payments, she could have avoided any purported confusion and avoided her claimed "damages," as Nelnet Servicing had explained in several prior communications that Plaintiff was not eligible for relief under the CARES Act, but could seek other relief. Thus, all of Plaintiff's claims fail on the facts.

But the Court has an even simpler route to summary judgment on Count I: Nelnet cannot be held liable for any alleged FDCPA violations because it is not a debt collector. Moreover, Plaintiff's claims against Nelnet, Inc. and Nelnet Diversified Solutions, LLC fail because Plaintiff has not alleged, and cannot

prove, that either entity was responsible for the voicemail in question.

Nelnet is entitled to the entry of summary final judgment.

## II.   **Statement of Material Facts**

1.    Plaintiff took out student loans to finance her education. Amended Complaint [ECF No. 14] at ¶¶ 8-10.

2.    Nelnet Servicing, LLC ("Nelnet Servicing") currently services several of Plaintiff's student loans. ECF No. 14 at ¶ 10.

3.    Nelnet Diversified Solutions, LLC is a 100% owned subsidiary of Nelnet, Inc. Declaration of Candy Cartwright ("Nelnet Decl.") at ¶ 6.

4.    Nelnet Servicing, LLC is a 100% owned subsidiary of Nelnet Diversified Solutions, LLC. Nelnet Decl. at ¶ 7.

5.    Nelnet Diversified Solutions, LLC does not service Plaintiff's student loans, nor has Nelnet Diversified Solutions, LLC ever contacted Plaintiff or had any involvement with Plaintiff's student loans. Deposition of Kimberly Isner Monticello taken on March 22, 2021 ("Monticello Depo.") at 59:18-22; Nelnet Decl.  at ¶ 22.

6.    Nelnet Servicing began servicing Plaintiff's student loans on or about June 8, 2018. Nelnet Decl. at ¶ 9.

7.    When Nelnet Servicing began servicing Plaintiff's student loans, the

subject loans were not in default. Nelnet Decl. at ¶ 10; Monticello Depo. at 56:1-3.

8.     Nelnet does not service loans which are in default. If any of Plaintiff's loans had been in default at the time, they never would have been transferred to Nelnet for servicing. Nelnet Decl. at ¶ 11.

9.     Although Plaintiff believes she made late payments at some point or another, she was never told that her student loans were in default, and could not identify a time when she made a payment that was more than one month late, prior to her student loans being transferred to Nelnet for servicing. Monticello Depo. at 55:2-56:3.

10.     Plaintiff's student loans that Nelnet Servicing services were made under the U.S. Department of Education's Federal Family Education Loan (FFEL) program. Under the FFEL program, loans were made by a private lender, and insured by the Department of Education. Nelnet Decl. at ¶ 12.

11.     In March 2020, the CARES Act was enacted which provided certain relief to borrowers with federal student loans owned by the U.S. Department of Education. The CARES Act did not offer this relief to borrowers with FFEL loans, however. Pub. L. 116-136; *See, e.g.,* https://www.forbes.com/sites/zackfriedman/2020/04/27/student-loans-cares-act-

ffel/#7ca9d15d6e6d

12.   Plaintiff believed that the CARES Act applied to her student loans serviced by Nelnet Servicing because of what she had heard on the news about federal student loans. Monticello Depo at 19:5-23.

13.   After the passage of the CARES Act, Plaintiff's monthly student loan payments continued to come due. Nelnet Decl. at ¶ 14.

14.   Plaintiff failed to make the payment due for March 2020. Nelnet Decl. at ¶ 16.

15.   Plaintiff explained that she failed to make the March 2020 payment on her student loans because she believed that certain provisions of the COVID-19 CARES ACT applied to her loan. ECF No. 14 at ¶ 13.

16.   Rather than contacting Nelnet Servicing to find out whether her student loans would be eligible for relief under the CARES Act or to learn her new payment amount, Plaintiff chose to forego making her March 2020 payment and wait to hear from Nelnet. Monticello Depo. at 19:5-22:17.

17.   On April 8, 2020, Nelnet Servicing sent Plaintiff an e-mail with a link to her monthly statement, which reflected that the March 2020 payment was still due and owing. Nelnet Decl. at ¶ 17.

18.   On April 11, 2020, Nelnet Servicing sent Plaintiff an e-mail

notifying her that her payment was 15 days past due. Nelnet Decl. at ¶ 18. Plaintiff acknowledges receiving the April 11, 2020 e-mail but "assumed, I believed, that Nelnet simply had not gone back and recalculated the loan amounts" [in accordance with the CARES Act]. Monticello Depo. at 36:25-37:2.

19.     On April 17, 2020, Nelnet Servicing sent an e-mail to Plaintiff, with the subject line, You can pause payments for 90 days due to COVID-19." The text of the e-mail specifies, "Even though your student loans in the account(s) listed above do not qualify for federal assistance under the recent CARES Act, we have options to reduce or postpone your payments." And then the e-mail specifies several options. Nelnet Decl. at ¶ 19.

20.     Plaintiff acknowledges receiving the April 17, 2020 e-mail but "believed this e-mail applied to the consolidation loans only." Monticello Depo. at 39:15-40:4.

21.     On April 27, 2020, Nelnet Servicing sent Plaintiff an e-mail with the subject line "KIMBERLY, your payment is 30 days past due." Nelnet Decl. at ¶ 18; Monticello Depo. at 41:8-12, Ex. 6.

22.     On April 28, 2020, Nelnet Servicing left Plaintiff a voice mail, which said, "This is Nelnet calling on behalf of the United States Department of Education. Call us today at 844-801-1792 or visit Nelnet.com to go over all of

the options available to you regarding your student loan account. Also, watch your e-mail or mail for key information about your account." ECF No. 14 at ¶ 12.

23.     The April 28, 2020 voice mail message makes no reference to the CARES Act. *Id.*

24.     After receiving the April 28, 2020 voicemail, Plaintiff did some research, contacted Nelnet, and made her past due payments. ECF No. 14 at ¶ 14; Monticello Depo. at 23:24-24:2; 50:6-51:6.

## III.   <u>Argument</u>

### A.     Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512; *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th

Cir. 2004).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). However, there must exist a conflict in substantial evidence to pose a question for the fact finder. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**B.  Nelnet is entitled to summary judgment because it is not a debt collector.**

Nelnet is entitled to summary judgment on Count I of Plaintiff's Amended Complaint because Nelnet is not a debt collector. "In order to state a claim under the FDCPA, a plaintiff must plausibly allege, 'among other things, (1) that the defendant is a debt collector and (2) that the challenged conduct is related to debt collection.'" *Shaw v. One West Bank, FSB*, 683 F. App'x 850, 853 (11th Cir.

2017), quoting *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012).

Nelnet is not a debt collector because "[u]nder the FDCPA, a debt collector does not include 'any person collecting or attempting to collect any debt … to the extent such activity … concerns a debt which was not in default at the time it was obtained by such person." *Brumberger v. Sallie Mae Servicing Corp.*, 84 F. App'x 458, 459 (5th Cir. 2004) citing 15 U.S.C. § 1692(a)(6)(F).

When Nelnet Servicing began servicing Plaintiff's student loans, the loans were not in default. *See* Nelnet Decl. at ¶ 10. In fact, Nelnet Servicing does not service loans that are in default, and if any of Plaintiff's student loans had been in default, they never would have been transferred to Nelnet for servicing. *Id.* at ¶ 11.

This is fatal to Plaintiff's FDCPA claim. *See Brumberger*, 84 F. App'x at 459; *Ramirez–Alvarez v. Aurora Loan Servs. LLC*, 2010 WL 2934473, at *5 (E.D. Va. July 21, 2010) (granting summary judgment for mortgage loan servicer, which was not debt collector for purposes of FDCPA because it "received the debt in question while it was not in default"); *Edmond v. Am. Educ. Servs.*, 2010 WL 4269129, at *5 (D.D.C. Oct. 28, 2010) (granting motion to dismiss plaintiff's FDCPA claims because "[a]bsent an allegation that plaintiff's loan was in default

when [the defendant] acquired it, [the defendant] is not a debt collector and this is not subject to the FDCPA"); *Ainsworth v. Transunion*, 2020 WL 4340540, *4 (N.D. Okla. July 28, 2020) (dismissing FDCPA claims against Nelnet because it was servicing borrower's loan before default).

The FDCPA's legislative history "indicates that the Congress intended to target *third-party or independent collectors* of delinquent debts because unlike creditors, whose actions are often restrained by their desire to protect their good will, independent contractors will generally have no future contact with the consumer and are therefore likely to place less importance on the consumer's opinion of their debt collection tactics." *Mondonedo v. Sallie Mae, Inc.*, 2009 WL 801784, at *3 (D. Kan. Mar. 25, 2009). "An entity that does not own the loan but merely 'services' the loan is treated as a 'creditor' and generally is not subjected to the FDCPA." *Id.* (granting summary judgment for student loan servicer who began servicing loans prior to default); *see also Taggart v. Wells Fargo Home Mortg., Inc.*, 2010 WL 3769091, at *11 (E.D. Pa. Sept. 27, 2010) ("Loan servicers are not 'debt collectors' under the FDCPA unless the debt being serviced was in default at the time the servicer obtained it.").

Nelnet Servicing is a servicer with an ongoing relationship with borrowers such as Plaintiff, unlike the debt collectors that Congress was concerned about,

and is not governed by the FDCPA. For this reason alone, Nelnet is entitled to summary judgment on Count One. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1325 (S.D. Fla. 2014) (dismissing FDCPA claim where complaint alleged it was acquired before default and servicer was therefore not a debt collector); *Willison v. Nelnet, Inc.*, 2020 WL 1914810 (S.D. Ohio Apr. 20, 2020) (granting summary judgment for Nelnet where plaintiff failed to raise genuine issue of material fact as to whether Nelnet is debt collector); *Parker v. BAC Home Loans Servicing LP*, 831 F. Supp. 2d 88, 94 (D.D.C. 2011) (dismissing claims for failure to plead sufficient facts to show that defendant is a debt collector); *see also Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 799-800 (11th Cir. 2016) (affirming dismissal of FDCPA claim where challenged actions were not in connection with debt collection).

**C.    Nelnet is entitled to summary judgment on all of its claims because it did not make misleading statements.**

Even if Nelnet were a debt collector – which it is not – Plaintiff's claims fail because evaluating Nelnet's communications with Plaintiff in their entirety, Nelnet did not make misleading statements. Specifically, under the FCCPA, Plaintiff claims that Nelnet falsely represented that it was calling with regard to a debt backed by the federal government [ECF No. 14 at ¶ 38] and threatened to collect a debt that was not legitimate. [ECF No. 14 at ¶¶ 39-40]. Under the

FDCPA, Plaintiff claims that Nelnet violated 15 U.S.C. § 1692(e)(1) by falsely representing or implying that it is affiliated with the United States of America, and violated § 1692(e)(6) by falsely representing the character, amount, and legal status of the debt on the voicemail.

The crux of Plaintiff's claims is the April 28, 2020 voicemail which stated "this is Nelnet calling on behalf of the United States Department of Education." Notably, the April 28, 2020 voicemail said nothing about the CARES Act. And Plaintiff's loans are associated with the United States Department of Education as they are FFEL Loans insured by the Department of Education. Nelnet Decl. at ¶ 12. The voicemail contained no representations regarding the amount of Plaintiff's student loans, nor the legal status. Complaint, ECF No. 14 at ¶ 12.

With regard to Fla. Stat. § 559.72(9) and 15 U.S.C. § 1692(e)(6), Plaintiff has no basis to claim that the debt is not legitimate. Nelnet Servicing is the servicer for the student loans she admits in her Complaint she borrowed, and Nelnet Servicing was calling because her loan payments were past due. These claims fail as a matter of law because Plaintiff admits that the debt is legitimate and that Nelnet Servicing is her loan servicer.

With regard to Fla. Stat. § 559.72(1) and 15 U.S.C. § 1692(e)(1), where Plaintiff is claiming that Nelnet falsely represented that it was calling with regard

to a debt backed by the federal government, more specifically the United States Department of Education, again, there was no false representation. Plaintiff's student loans that are serviced by Nelnet Servicing were made under the U.S. Department of Education's FFEL Program and are insured by the Department of Education. Nelnet Decl. ¶ 12.  The student loans are indeed "backed" by the federal government. Plaintiff's gripe is that FFEL loans, although made under a federal program and insured by the Department of Education, were excepted from relief under the CARES Act. This Court cannot afford Plaintiff any relief for that gripe.

It is important for the Court to consider the timeline here. The CARES Act became law on March 27, 2020. Public Law 116-136.  Plaintiff did not make the payment due on March 28, 2020. The next monthly statement that Plaintiff received, dated April 8, 2020, reflected that the March 2020 payment was still due. Nelnet Decl. ¶ 17; Ex. 2. Plaintiff did not contact Nelnet to question why her March 2020 payment was still showing as due when she claims she believed she was eligible for relief under the CARES Act.

Then on April 11, 2020, Nelnet Servicing sent Plaintiff an e-mail with the subject, "Your payment is 15 days past due." Nelnet Decl. ¶ 18; Comp. Ex. 3.

On April 17, 2020, Nelnet Servicing sent Plaintiff an e-mail with the

subject, "You can pause payments for 90 days due to COVID-19." The text of the e-mail specifies, "Even though your student loans in the account(s) listed above do not qualify for federal assistance under the recent CARES Act, we have options to reduce or postpone your payments." And then the e-mail specifies several options. Nelnet Decl. ¶ 19; Ex. 4.

On April 27, 2020, Nelnet Servicing sent Plaintiff an e-mail with the subject line "KIMBERLY, your payment is 30 days past due." Nelnet Decl. ¶ 18; Comp. Ex. 3.

Then on April 28, 2020, Plaintiff received the voicemail about which she complains. She alleges that Nelnet falsely represented that it is affiliated with the United States of America, and as a result of the voicemail, she "has lost work time while calling and inquiring as to her CARES Act deferment when it was not available." ECF No. 14 ¶¶ 33, 41.

It is true that Plaintiff did not call Nelnet until after she received the April 28, 2020 voicemail. But Plaintiff had already taken action on the mistaken belief that a CARES Act deferment was available to her when she decided not to make the payment due on March 28, 2020. That action, which Plaintiff admits was based on her understanding of the news, is what started the entire chain of events – not Nelnet's voicemail. Monticello Depo at 19:5-23. Sometime prior to March

28, 2020, Plaintiff formed the mistaken belief that her student loan payments did not need to be made because of the CARES Act, and that Nelnet would contact her with an updated payment amount if only certain of her loans were eligible for deferment. After Plaintiff ignored several e-mails from Nelnet Servicing, assuming that its system was not yet caught up with the CARES Act, the April 28, 2020 voicemail woke her up, spurred her to call Nelnet Servicing and make a payment, preventing her loans from becoming further past due.

If anything, it appears that Plaintiff's complaint should be with Congress for not including FFEL loans in the CARES Act or with the news media for leading her to believe that she could just stop making payments on her student loans without first confirming her eligibility with Nelnet. Nelnet Servicing's multiple communications made it clear that Plaintiff's student loans were not eligible for relief under the CARES Act (although there were other relief options available) and that Nelnet considered her March 2020 payment to be past due.

There is no genuine issue of material fact – Plaintiff's student loans are associated with the U.S. Department of Education as FFEL loans. Thus, Nelnet did not make any misrepresentations. Absent any misrepresentations, Plaintiff is not entitled to any relief under either the FDCPA or FCCPA. Plaintiff mistakenly assumed that her FFEL loans would be eligible for CARES Act relief and stopped

making payments based on that assumption, not based on any representations by Nelnet. To the contrary, Nelnet Servicing sent Plaintiff several communications indicating that her loans were <u>not</u> eligible for relief under the CARES Act.

Plaintiff's claims fail on the facts.

**D.    Nelnet Diversified Solutions, LLC and Nelnet Inc. are Separately Entitled To Summary Judgment**

Although Plaintiff names Nelnet Diversified Solutions, LLC and Nelnet, Inc. as Defendants, the Amended Complaint is completely devoid of any allegations of any wrongdoing by either entity and they are entitled to summary judgement for two additional reasons.

First, Plaintiff has merely lumped together Nelnet, Inc., Nelnet Diversified Solutions, LLC, and Nelnet Servicing, LLC in an effort to triple her statutory damages. Yet, Nelnet Servicing, LLC is the entity that services Plaintiff's student loans and the entity that called Plaintiff and left the voicemail in question. Nelnet Decl. at ¶¶ 9, 22-23. Nelnet Diversified Solutions, LLC and Nelnet, Inc. are entitled to summary judgment on this basis alone. *See, e.g., Boardwalk Fresh Burgers & Fries, Inc. v. Wang*, 2021 WL 372825, *3 (M.D. Fla. Feb. 3, 2021) (dismissing complaint that failed to "treat each defendant as a separate and distinct legal entity and delineate the conduct at issue as to each [defendant]."); *Marco Island Cable v. Comcast Cablevision of the South, Inc.*, 2006 WL 82861,

*1 (M.D. Fla. Jan. 12, 2006) ("the proposed new pleading is inherently vague and confusing because it lumps all three defendants as "Comcast" and fails to put defendants or the court on notice of just what it is that each defendant is alleged to have done or the basis of liability for each defendant.")

Judge Dimitrouleas' decision in *Bentley v. Bank of America, N.A.* is instructive. 773 F. Supp. 2d 1367 (S.D. Fla. 2011). In *Bentley*, a mortgagor sued two mortgage servicers for claims under the FDCPA, FCCPA and TCPA. The court dismissed the TCPA claims because "nowhere in the Complaint does Plaintiff identify which Defendant made each call, but instead he simply lumps the Defendants together despite that they are separate and distinct legal entities." *Id.* at 1374. "It is inconceivable to the Court that both Defendants could have somehow made each alleged call, yet that is exactly what Plaintiff appears to be alleging." *Id.* at 1373.

Similarly here, Plaintiff is improperly lumping together three separate Nelnet entities and accusing them of leaving the same voicemail. Nelnet Diversified Solutions, LLC and Nelnet, Inc. are entitled to summary judgment as there is no genuine issue of material fact – neither entity is alleged to have left the voicemail in question.

Second, as demonstrated in the Declaration of Candy Cartwright, neither

of these entities had any communication with Plaintiff. Rather, all communication was from Nelnet Servicing only. Decl. ¶¶ 9, 22-23.

### E.    Count II should be dismissed.

If the Court enters summary judgment in Nelnet's favor on Count I, yet finds that material issues of fact preclude the entry of summary judgment on Plaintiff's FCCPA claim, the Court should still dismiss Count II for lack of jurisdiction. Plaintiff brings Count II for purported violations of the FCCPA under 28 U.S.C. § 1367. Section 1367(a) "permits a court to dismiss any state law claims where the court has dismissed all the claims over which it had original jurisdiction." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Once the Court enters summary judgment on Count I, it will have dismissed all claims over which it has original jurisdiction. The Court may consider judicial economy, convenience, fairness and comity in exercising its discretion to exercise supplemental jurisdiction. Dismissal of state law claims is strongly encouraged when federal law claims are dismissed prior to trial *Id*.

Here, the supplemental claim is a state law claim, best resolved by Florida courts, and should be dismissed. *Id.*; *Handi-Van Inc. v. Broward County Fla.*, 445 F. App'x 165, 170 (11th Cir. 2011) (district court did not abuse its discretion in remanding remaining state law claims following dismissal or summary

judgment on all other claims); *Green v. Portfolio Recovery Assocs., LLC*, 2013 WL 12141343 (S.D. Fla. Dec. 12, 2013) (remanding FCCPA claim after plaintiff dropped its federal claims); *see also Lutz Surgical Partners, PLLC v. Blue Cross & Blue Shield of Fla., Inc.*, 2017 WL 10295955, *3-4 (M.D. Fla. Dec. 14, 2017) (remanding state law claim); *Fisher v. SP One, Ltd.*, 2013 WL 268684 (M.D. Fla. Jan. 24, 2013) (same).

## III.   <u>Conclusion</u>

For the foregoing reasons, Nelnet is entitled to the entry of summary judgment on all of Plaintiff's claims.

/s/ *Naomi M. Berry*
Naomi Berry (FBN 69916)
Carlton Fields, P.A.
700 NW 1st Ave., Suite 1200
Miami, Florida 33136
Telephone:  (305) 530-0050
Facsimile:   (305) 530-0055
nberry@carltonfields.com

and

Daniel C. Johnson (FBN 522880)
Carlton Fields, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, FL 32801-3400
Telephone: (407) 849.0300
Facsimile:  (407) 648.9099
Email: djohnson@carltonfields.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing has been furnished, electronically, through the CM/ECF system, to all counsel of record on this 3rd day of May 2021.

*/s/ Naomi M. Berry*

124876992.1